Case number 4-15-0997, People v. Christopher Westfall. Appearing for the appellant is attorney Kiwara Wilson. Is that how you pronounce your last name? Kiwara. Kiwara, thank you. And for the appellee is attorney McClain. Thank you. Ms. Kiwara Wilson, you may proceed. May it please the court, counsel. My name is Salome Kiwara Wilson. And on behalf of the Office of the State Appellate Defender, I represent Mr. Christopher Westfall. Mr. Westfall was charged with two counts of sexual assault based on placing his mouth on Ms. Edwards' vagina and placing his penis inside Ms. Edwards' vagina. At trial, there were statements introduced from Mr. Westfall in which he denied, he acknowledged that he had oral sex with Ms. Edwards but denied that it was forceful, stating that it was consensual, but denied having vaginal intercourse with her. The DNA evidence in the case was the difference between the jury believing Mr. Westfall in his denial that he had vaginal intercourse with his wife or believing her testimony that he did. The ISP forensic scientist who conducted the tests on the menstrual pad that Ms. Edwards testified she wore after the assault she reported conducted four tests, an alternative light source test, a P30 test, an acid phosphatase test, and a microscopic test. While the scientist testified that semen was indicated in three out of the four tests, this did not mean that the stains were a match for semen. It could have been urine, vaginal secretions, fecal matter, saliva, and female serum. Especially because the microscopic test, the only confirmative test conducted, was negative because no spermatozoa was found. Trial counsel's failure to cross-examine the state's forensic witnesses reflects a failure to investigate the case because at the time of trial there existed scientific articles and material and counsel could suddenly have hired an expert to cast doubt on the infallibility of the state's DNA evidence. It would have taken counsel minutes on a general search engine such as Google to realize that there was a line of questioning available to him to adequately test the state's case. There was no trial strategy in failing to question the forensic scientist about the nature of the tests conducted. Counsel's failure was simply a demonstrated fundamental misunderstanding of the DNA. He told the trial court pre-trial that there was a match on semen even though nothing in the record indicates that there was anything that showed that the substance was semen any different from the testimony that was given by the ISFP forensic scientist. Counsel then went on, in closing argument, to argue to the jury that Mr. Westphal should have just confessed that he had vaginal sex with his wife presumably because of the match on semen that counsel believed existed. Counsel also failed to cross-examine the forensic scientist on the fact that Mr. Westphal's DNA would have been the same whether it came from his saliva or his semen. And therefore, the fact that he could not be excluded from the DNA did not mean that there was a match on semen and could have been simply the saliva that he had already acknowledged to having oral sex with his former wife. The failure to challenge the state's DNA evidence allowed the state... Why was it a good trial strategy to argue under the peculiar circumstances in this case that they had sex and it was consensual? Because Mr. Westphal had denied that they had any vaginal intercourse. Therefore, for trial counsel to be alleged... So he denied that to the couch, right? Yes. So he says, okay, he denied it to the couch, but you know what really happened here. They had an argument and they went back there and they had consensual sex. She doesn't really remember and she wasn't sure and she's taking this medication and they had consensual sex. It's not guilt. Isn't that, in fact, what he argued? Actually, he spent most of the time at trial pointing out that Ms. Edwards was that credible. He only brings up the consent defense in closing argument where he's fighting against his own client's words and having to say... Why isn't that a good strategy? Because it doesn't help Mr. Westphal. But Jerry could have bought it. What do you mean it doesn't help him? Jerry could have looked at this strange case, decided that they'd been in an off-again relationship and she doesn't really remember and he just didn't want to admit it to the couch. But that's what really happened here. I would suggest... If he had created a reasonable doubt about whether there was consensual sex, that would have been enough for not killing, wouldn't it? Even based on what he did present, the jury still had questions on the conclusion that semen was found on the menstrual pad. The suggestion that he was arguing a consent defense but only brought it out in closing argument still prejudices Mr. Westphal. What do you mean only brought it out in closing argument? At what point was he supposed to have brought it out? He could suddenly have brought it out when he was questioning Ms. Westphal. If I remember correctly, he was only questioning her on her ability to remember what happened that night. Isn't that helpful to try to establish she doesn't really remember carefully? So then he can argue that maybe there was consensual sex, sir? No, because if he was trying to argue consensual sex, he could suddenly have brought up the many other times that they were friends with benefits over that year and they had sex. And suddenly fighting the state's case on the DNA would not have hurt Mr. Westphal as an alternative because there was no other evidence of consent. The trial counsel's failure to challenge the state's DNA evidence prejudices Mr. Westphal because in closing argument the state was able to argue over and over again that semen was found, the ISP text justified to semen being found, that the science supports Ms. Edwards' story because semen was found, that semen was found because his penis was inside her and they can make that inference and that did not come from a lack of penetration. It came from the fact that he committed that aspect of the crime. The state also argued that even Ms. Edwards was more credible than Mr. Westphal based on the DNA evidence testifying that Mr., sorry, arguing that Mr. Westphal's statements are the lies. She told you she felt his penis inside her and she told you he ejaculated and now the defense wants you to believe that she's the incredible one. Counsel's failure to challenge that DNA left the state unintentionally misleading the jury. Counsel suddenly would have had How do we know a challenge of the DNA would have changed any evidence about it? I'm sorry. How do we know the DNA expert had the expert been challenged about her testimony would have changed anything? Because of the jury's question at the end. No, no, no. I'm sorry. Maybe I'm not being clear. The expert who testifies the DNA expert. Who was that person? Acosta Talbot was the one who did the forensic testing and then Carrie Broaddus did the DNA examination. So Acosta Talbot is her name? Yes. She testified that she found DNA What did she say? She said she conducted four tests and that the first test, the alternative light source test showed the possibility of bodily fluids or semen and then she testified that the other two tests were semen indicated and then as a result of the microscopic test semen was not identified on the stain. So what could or should he have asked a defense counsel that would have changed her testimony? Well, the fact that the two tests, rather the three tests the alternative light source and the other two were presumptive tests and the microscopic test was the negative because there was no presence of spermatozoa therefore there were other the tests, the presumptive tests test for, so the acid phosphatase test for that substance that enzyme, acid phosphatase that's found in other substances other than just semen as is the prostate specific antigen despite the name therefore she's testifying to these tests being positive for those substances not necessarily for semen and the one test that could have confirmed the presence of semen was negative and that's what the cross-examination would have revealed. So, he needed to do research on this subject to confront this witness and you're claiming that her witness her testimony would have been undermined? Correct. But we don't know that, do we? We do because again the investigation would have revealed just the very basic nature of it. She is a DNA analyst for the Illinois State Police and had she been asked to clarify her response to some of these questions we don't have what her response would have been, do we? She might have very well said all the points you're just now making, that's not correct. Isn't that why we have disagreements among experts? Yes, but then the jury would have been properly, would have had the proper evidence in which to She has asked questions by defense counsel carrying certain implications. She says, no, that's not right. Now what? But the science, or rather that would have been incorrect of her to say You mean she testified incorrectly? No, and she herself never says it's a match. She says semen indicated and then she says on the microscopic semen is not identified which if semen was a match she would have said semen is identified other than other tests. So counsel asking her the differences between the tests or the significance of the absence of the somatozoa would have led the jury to reach its conclusions without having to ask that final question Were the tests positive for bodily fluids or for semen? And that's where counsel's error comes through and counsel wasn't making a strategic choice not to question her on these issues because counsel himself believed that there was a match on semen and which is why counsel doesn't even question the DNA expert on the fact that the DNA could have come from saliva or from semen Therefore questioning based on the jury's question would certainly have helped Mr. Westphal in this case because it was a credibility contest. Who would the jury believe? Mr. Westphal or Ms. Edwards? And the jury was still wrestling with that question during the deliberation which is why they asked the question they did. So in summary of that argument had counsel put the state's forensic testing to an adversarial testing which is what he's required to do under the Sixth Amendment there's a reasonable probability again based on the jury's question and the fact that the evidence in this case turned on the credibility of one witness versus the other that Mr. Westphal would not have been found guilty. So the jury's similarly counsel provided ineffective assistance when he failed to present the evidence on the relevance of Ms. Edwards' mental health to her testimony at trial. Counsel was told by the court a week before that hearing that the court would be holding a hearing specifically to determine the relevance of Ms. Edwards' mental health to her testimony at trial but counsel still showed up at the hearing unprepared to proceed. The state argues that what he tried to do in asking for that's true. However, he should have had a backup plan. He should have properly prepared for that hearing because he it was highly unlikely that the state would concede after having filed a motion indemnity to exclude the information and having argued at the hearings a week before the one that in which Catherine testified that they still wanted to keep the evidence out. Had counsel prepared for that hearing and questioned Ms. Edwards specifically about the known side effects of the medication that she was taking, counsel would not have been restricted from fully cross-examining her trial. She testified that she took Abilify as a sleep aid when it was the only one of the medications she listed that was used to treat schizophrenia. Furthermore, at that hearing she testified that without her medication for schizophrenia she sweats, shakes, and cries uncontrollably. If counsel had been prepared, he would have been allowed to cross-examine her at that trial and the jury would have had the opportunity to weigh her testimony that she shakes, cries Well he did challenge that, he did seek to get it into evidence and the trial court wouldn't let him but you're not arguing the trial court made an error in its refusal your argument is he didn't argue it well enough? No, the argument is that he didn't prove the relevance he was required to in order to allow him The argument was relevant the argument should come in, the trial court doesn't agree Why aren't you appealing the trial court's ruling? Because the trial court didn't make an error based on the evidence or the lack of evidence the trial counsel provided Trial counsel was asked to provide as the court put it, I believe the court said the court was looking for personal experience or something else to it with a degree of medical certainty that her medication or her mental health could have affected her credibility or her ability to perceive the events of that evening. Counsel provided Didn't he examine her outside the presence of the jury with the court's permission to try to establish the relevance of her mental health prescription drug use? Yes And that wasn't good enough? No Why not? Because, okay, let's look at it this way. The only reason he was allowed to introduce the Abilify was because she testified that it could have affected her sleep age. She provided essentially the reasoning for why that medication might affect her ability to perceive it So what should counsel have done? Counsel should have brought in the proper evidence to allow him to cross-examine her on the Lexapro. And what is that? He could have asked her specifically about the side effects, but counsel didn't have that information because he didn't ask her about it. He couldn't have fully relied on her giving So he makes an offer of proof he has the witness understand, he asks her questions, and he gets some success with Abilify but he didn't ask good enough questions to bring out the other stuff? Is that the claim? He didn't make an offer of proof even as to the Abilify He was fully relying on the answers that Ms. Edwards gave which is where the error is. If he had fully prepared and known the other side effects of the other medication, he would have been able to cross-examine her directly on those medications The Abilify comes in She says, in fact she did say that didn't bother me. I didn't have those effects Precisely, and she says that as to the Abilify as well, but the court nevertheless finds that the Abilify comes in because it does affect someone's ability. But the court had a had what? He's going to argue with the witness about were you affected by this? And she says no and he's going to say, oh no you must have been Because some people are? No How does that work? With the Abilify because that came in With the Abilify, she testified that it doesn't affect her Besides Abilify Wasn't she asked about that? She said it didn't affect her? She said it didn't affect her, but my point is if counsel had been asking her pointed questions about the ability of those drugs to affect her just as he did with the Abilify once she had brought out that it affects her ability to fall asleep the judge would have allowed him to cross-examine at trial because he would have seen the potential of the side effects of the medication. She had already herself testified that she does not take her medication regularly. She takes it as soon as she remembers or doesn't remember. And furthermore then the judge, counsel would have been able to point out the Abilify is the only medication she's taking that actually treats her schizophrenia. If she takes the Abilify as she takes I think it was the Depakort which she took twice in the span of I think five hours, then the Abilify could suddenly maybe have affected her shaking, crying uncontrollably sweating, which are similar to the testimony that was given later on describing her as hysterical. So suddenly he would have shown the relevance of having this information before the jury for the jury to decide whether that was what whether her emotional state that night was a result of an assault or as a result of her mental illness and medication or lack thereof. And again, the mental health of the witness is relevant as it relates to credibility and it's a permissible area of impeachment and counsel by not arriving prepared for that hearing foreclosed that whole area to Mr. Westphal during trial. Moving on to the Zaire issue here. The court failed to properly admonish two of the jurors who went on to be sat on the jury as to the admonishments found in Supreme Court Rule 431B That's error. But Mr. Westphal did not preserve this error and we're asking this court to make a first-pronged claim error as to the mouth-to-vagina count as opposed to the penis-to-vagina count because the evidence there was closely balanced based on the fact that it is Mr. Westphal's testimony versus Ms. Edwards' testimony with both suffering from some inconsistencies but we argue with more inconsistencies in Ms. Edwards' testimony. So if this court finds that the evidence is closely balanced as to one count versus the other, we ask that the court reverse as to the mouth-to-vagina count based on the Zaire admonishment error. Didn't he in his statement to the police admit that he had done that? Yes. The question is consent. He says he did have oral sex with his wife but it was consensual. She argues it was not consensual and that it's a balance of the two. So that's enough to make this closely balanced? Basically that there is no extrinsic evidence that corroborates or Well, she said he did it and I didn't exceed. He acknowledged in his statement to the police now when he testified because he never testified. Yes. Yeah, he did it but she consented. And of course there was all of this is being consensual. Yes. So that makes it closely balanced? You have two versions of the same event with neither version being supported by any extrinsic evidence or being taken any extrinsic evidence showing one side is lying versus the other. Although we would argue that Ms. Edwards' version of events has more inconsistencies than Mr. Westphal's. Therefore, under SEBI, yes, this is closely balanced. Well, of course, he never testified. Yes, but his statements were offered by the state to be used against him. But when you talk about his inconsistencies, he has fewer inconsistencies. That's really a term that's best used if a person actually testifies and the jury is evaluating. In terms of how... Because in fact, in the course of his statement, he had all kinds of stories before he finally got to what was his last. He simply takes him a while to get to the point where he says he had oral sex with her but did not have vaginal intercourse. A generous assessment. If there are no further questions, we ask that this Court reverse Mr. Westphal's conviction and that he be released every month when you trial. All right. Thank you. Ms. McClain? May it please the Court? The State argues that the defendant was not denied effective assistance of counsel. In this case, defense counsel's decision not to cross-examine the forensic scientist was a matter of trial strategy. The victim had testified that the defendant had oral sex with her, bit her labia, and had vaginal sex with her, all against her will. The defendant told the police he had consensual oral sex with the victim, but denied biting her or having vaginal sex with her. In this case, the strategy by defense counsel, which is evident in his closing argument, is that the defendant was naive in his statement to the police and should have just told him the truth, that all the sex was consensual. And in fact, another evidence that that is the strategy here is that the jury was instructed on consent. Defense counsel's thinking process in this case is that the evidence he elicited throughout the trial corroborates a defense of consent. He elicited that the victim failed to report this crime for 12 hours, that the cut on her labia could have been from defendant's fingernails or self-inflicted, defendant came over with her permission, having texted that he missed having sex with her, any marks to her hip, forehead, or neck were not visible, and there were no tears in her underwear or nightgown. All of these facts, elicited by defense counsel, corroborated his defense of consent. In this case, if defense counsel had brought out the lack of distinction between saliva and semen when he cross-examined the forensic scientist, he still doesn't eliminate the possibility of semen being present. So, given that he's not eliminating the possibility of semen, and in fact, defendant's statement is all over the place, and he's definitely being untruthful, I think that defense counsel in this case felt that his best angle would be to urge defense of consent. Assuming that the jury would believe defendant's statement that he just had consensual oral sex, then he has to explain why would the victim make up the vaginal sex. If the saliva is present, and there's evidence that he bit her, then he might have been convicted of one count anyway. Maybe the better strategy is to attack both counts by alleging all the sex was consensual. That's one of the best processes the defense counsel may have had in this case, and I would argue that that was a strategy that was implemented in this case. That all the sex was consensual. Defendant is asking this court to speculate that a different trial strategy might have been more successful to cross-examine the forensic scientist as defendant asserts would have been contrary to his strategic decision. However, the jury's verdict was not based on failure on the part of defense counsel to challenge the forensic evidence, but because it found the victim's testimony that the sex was not consensual more credible in light of the other evidence presented at trial. Key to the jury's determination of the credibility contest was defendant's evolving statement to the police, the overall consistency of the victim's statement, the bite mark to the victim's labia, the victim's demeanor during her testimony, the court even offered her a Kleenex, the victim's demeanor when reporting the offense, and the testimony concerning the text messages. The state would argue that the failure to question the forensic scientist did not render the result of the trial unreliable or fundamentally unfair. As for my opponent's argument that defense counsel was ineffective in failing to present evidence to establish the relevance of the mental health diagnosis and prescription medications of the victim, the state would argue that defense counsel attempted to establish relevancy, but was unable to create relevance where there was none. There is nothing in the record that any of the victim's mental health diagnoses or medications that she was on affected her perception of events or her ability to recall events. It is not enough to establish a possibility that she might have been affected. Defense counsel would have had to establish that she was affected in order to establish relevance. The victim in this case testified that she fell asleep because of the Abilify and the court found that that Abilify and the side effect of that medication were relevant and allowed that evidence in. Nothing else in the record establishes the relevancy of any of the other medications or her mental diagnosis. Any cross-examination related to her mental illness would not have impeached her testimony. The victim testified that her medications completely controlled her illness and that the medications do not affect her ability to observe or recall. The evidence presented at trial corroborates this as the victim reported in detail what had happened to the police and to the nurse at the hospital later that day. There is nothing to suggest that any of her mental illness or medications with the exception of Abilify impaired her perception or ability to recall. Finally, the defendant has failed to establish the prejudice prong of Strickland. The victim's testimony was not the only evidence against the defendant which included the photograph and testimony concerning the tear in her labia, her demeanor when reporting the offense, her demeanor when testifying, the corroborating statements to others, and the testimony concerning the text messages. As for the Xer air in this case, the state is arguing that plain air does not apply. Any error in questioning the veneer did not tip the scales of justice against defendant as evidence was not closely balanced. Defendant concedes that the evidence presented on count 2 which is the penis to sex organ count was not closely balanced but contests the nature of that evidence in argument 2. Defendant then asserts that this court should apply the plain air doctrine despite this concession that the evidence is not closely balanced as to the penis-vagina count. Counsel, why should we divide up the analysis of whether the evidence is closely balanced on each count? That is our former colleague Justice Hefton addressing this case thought that this was just doesn't make good sense. And he wrote the following in dissent. The majority refuses to apply the plain air doctrine to this case because the evidence of the other count, Hefton-Roberts, is not closely balanced. Apparently, in the majority's view the defendant were charged with one count of first-degree murder and one count of misdemeanor theft, and the evidence were closely balanced on the former count, not on the latter count. Review of the doctrine of plain air would be unavailable. It would not matter that because the evidence of the murder was closely balanced an error might have caused the defendant to be wrongly convicted of that offense because the evidence that he committed misdemeanor theft was overwhelming. That approach to plain air cannot logically be sustained. That was a dissent he wrote in 2008 where the defendant was found guilty of criminal sexual assault and attempted robbery, but in view of what the Illinois Supreme Court has stated since last year in the semi, isn't he right and why shouldn't we adapt the notion that the state has multiple counsel and multiple convictions that the closely balanced analysis of SEBI should apply to both and if either if the evidence were closely balanced using his example of the murder first-degree murder count, we wouldn't care that it was overwhelming and not closely balanced on the misdemeanor theft. I think SEBI, or CB that case in 2008 from this district is distinguishable because in that case the respondent admitted attempted robbery so it wasn't closely balanced on the count that he admitted in this case the defendant is not admitting one of the counts and one of the offenses he's saying it was consensual so there's a complete distinction from... Well, I'm just talking about generally why isn't his analysis, I think maybe it would be worthwhile to adopt no matter what, but particularly given the Supreme Court said in SEBI that if the evidence is closely balanced, why shouldn't we require the conviction to stand that the evidence not be closely balanced with regard to all the convictions? I think in SEBI the court assessed the evidence on the elements of the offenses along with the credibility but the court also stated that a reviewing court must evaluate the totality of the evidence and in this case in particular the evidence is each party's version of the events and it's closely tied to both offenses not just one. For example, if the defendant is conceding the evidence presented on count 2 penis is sex organ was not closely balanced count 2 that count also alleged that the vaginal sex was by force and without consent so I guess my opponent is conceding that the evidence of consent and by force is not closely balanced so I think in this case when there's like two versions of the event, I don't see how you can do the analysis that Judge Appleton said Analyzing the evidence in this case so I'm disagreeing with that analysis where you divide each offense up and evaluate closely balanced on each one, but even analyzing the evidence in this case overall it's not so closely balanced The victim's statements to Officer Figueria, Emergency Room Nurse O'Neill and Detective Stunkle corroborated her testimony Officer Figueria reviewed the text messages and they corroborated what the victim had said were in them The victim's testimony was corroborated by her demeanor when reporting the crime. She was visibly upset, hysterical, crying profusely lying in a fetal position The victim's testimony that defendant bit her was corroborated by the laceration on the inside of her vagina. In defendant's interview with the police he said he had not been to the victim's home in six months he did not do anything to her he went there a month ago he tried to kiss her a little bit but she said no and he left nothing happened, no sex happened he kissed her all over including her breasts, nothing happened below the waist, he licked her vagina and rubbed her vagina but did not penetrate her with his fingers he stuck his finger in her and he did not bite her His statement was there were major inconsistencies and it was definitely not credible and I would argue that this evidence is not even remotely closely balanced Are there any other questions? I don't see any We'd ask the court to affirm defendant's conviction Alright, thank you. Rebuttal argument? In arguing that Mr. In arguing that the evidence is not closely balanced on the vagina to vagina count is not a concession on things like force and consent. We're simply arguing that the evidence on the DNA may have tilted the balance in the state's favor. The jury and we did not have the benefit of what we know now and had the defense counsel challenged that evidence then we would not be arguing that it was closely balanced so that's basically based only on the DNA evidence Counsel states that the trial strategy not to challenge the state's evidence on the DNA because had they done that they would have had to explain why she would make up the vaginal sex. But the defendant doesn't have the burden at trial. The state does. He would not have had to do any such or make such an explanation and the state eliminating the semen or rather arguing against the DNA as coming from saliva or semen as opposed to just leaving the evidence without any challenge, again does nothing in terms of harming Mr. Westphal in having to explain why she would make up the vaginal sex. Eliminating the semen and crossing off the DNA, that's why he had to cross-examine both of them. He had to cross-examine on the forensic testing and then he had to cross-examine on the relevance of the DNA being found. The jury's verdict was based on the DNA. That's the key evidence that the jury used to question. To argue that it was just simply everything else but the DNA is to ignore that final question, which is very important. Again, Ms. Edwards' story was not corroborated by the police or the nurse at the hospital. Ms. Edwards reported horrific injuries to her vagina or to her labia stating, I think, at one point that it was like she had a whole other vagina next to her vagina and the nurse was very clear. The injury was quite small, looked like it could have been self-inflicted with a fingernail. This was not as Ms. Edwards reported it. Again, she reported injuries to being bit on her hip, but to the nurse she said she was bit on her buttocks. Nobody could find any such injuries. She said she was dropped to the floor, hit her head, there was no bruising on her head from the people who first reported to her home to assist. Therefore, there was no corroboration and some of the hysterical behavior that was reported, again, could have been explained by the mental illness that was not allowed to be crossed at trial because trial counsel was ineffective for not presenting it properly at the hearing. Again, one other inconsistency in Ms. Edwards' story was that she said that the police told her to throw out evidence, which is highly unlikely. Therefore, again, we say that but for trial counsel's ineffectiveness, Mr. Westfall would not have been convicted because there was simply not enough evidence and if counsel had properly challenged the evidence, this would have been clear to the jury, which would have made the finding that the DNA evidence was not conclusive and Ms. Edwards was not credible and therefore, Mr. Westfall was not guilty. We therefore ask this court to reverse the convictions and send back, to reverse the convictions and send back for a new trial based on the ineffective assistant claims as well as the ZEHR issue. Thank you. Thank you. Counsel, the case will be taken under advisement.